UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

THOMAS GIRBES-PIERCE, :
:
Plaintiff, :
:
-v- :
:
CITY OF NEW YORK, *et al.*, :
:
Defendants. :

-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __04/09/2019__

**<u>OPINION AND ORDER</u>**

16-CV-7510 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Thomas Girbes-Pierce brought this lawsuit alleging that two officers of the New York City Police Department, Police Officer Craig Sikorski and Lieutenant Ian Rule, violated his civil rights under federal and state law by subjecting him to excessive force when they arrested him on September 2, 2015. Following a three-day trial, a jury returned a unanimous verdict in favor of Girbes-Pierce against Sikorski, in which it awarded him $1.00 in nominal damages in lieu of compensatory damages and no punitive damages. A separate verdict was entered in favor of Rule. Now before the Court are Sikorski's motion for entry of judgment as a matter of law based on qualified immunity, and Girbes-Pierce's motions for judgment on his state law battery claim and for a new trial on damages. For the reasons set forth below, Sikorski's qualified immunity motion is denied and accordingly, Girbes-Pierce's motion for judgment on his battery claim is granted. However, Girbes-Pierce's motion for a new trial on damages is denied.

## I.    Background

On October 29, 2018, trial commenced on Girbes-Pierce's excessive force claim brought pursuant to 42 U.S.C. § 1983, in which he alleged that Officer Sikorski and Lieutenant Rule used excessive force when they arrested him for allegedly buying drugs from a person on the street on September 2, 2015.[1]  Girbes-Pierce's arrest and the disposition of the underlying charges against him were not at issue at trial.  During the trial, the jury heard two different accounts of what transpired when Girbes-Pierce was arrested by Sikorski and Rule.

According to Girbes-Pierce's version of events, the incident began when his arm was grabbed and he thought he was being mugged, and only when he was pepper-sprayed and handcuffed did he realize that Sikorski and Rule were police officers.  *See* Trial Transcript ("Tr.") at 74:22–75:19.[2]  He testified that before he was pepper-sprayed he was hit, punched, pushed, and kicked.  *Id.* at 75:20–76:20. Girbes-Pierce also testified that he tried to protect himself during the incident by curling up in a fetal position, keeping his arms up to block his neck and face, and screaming "call the police."  *Id.* at 75:7–15, 81:21–25.

---

[1] On February 28, 2018, Girbes-Pierce's federal and state false arrest and failure to intervene claims were voluntarily dismissed with prejudice, leaving only his federal excessive force and state battery claims at issue.  *See* Dkt. No. 34.  However, the parties agreed not to try his state law claim because the standard of proof for his federal excessive force and state battery claims is the same.  *See* Proposed Jury Instructions dated June 29, 2018, at 11–12, n.7 (citing *Humphrey v. Landers*, 344 F. App'x 686 (2d Cir. 2009)); and 17, n.21, Dkt. No. 43.

[2] The trial transcripts from October 29, 2018 through November 1, 2018 can be found at Dkt. Nos. 76, 78, 80, and 82.

With respect to his damages, Girbes-Pierce testified that he experienced back and shoulder pain and had "big bumps on [his] head"; he also stated that he "couldn't sit or stand up in the [police] precinct because of the pain." *Id.* at 82:13–18. He explained that during "[t]he first couple of days [the pain] was as severe as the first day," and lasted "four to five weeks or so." *Id.* at 83:2–6. Girbes-Pierce also testified that the physical and emotional pain affected his ability to work for "several months," alleging that he "couldn't get out of bed," "struggled getting up and down" from where he lived "on [the] top [floor] of a four-story walkup in Soho," and "was just really scared to leave [his] apartment" because "[he] was attacked and violated and [ ] didn't feel safe in the city anymore." *Id.* at 84:5–85:9, 86:5–8. Girbes-Pierce further testified that the incident "stripped away [his] confidence" and "ability to socialize." *Id.* at 86:5–10. He explained that he sought therapy and was treated by doctors after the incident. *Id.* at 83:21–22, 85:11–14.

According to Sikorski and Rule's version of events, they approached Girbes-Pierce after observing what they believed was a hand-to-hand drug transaction with a known drug dealer, identified themselves as police officers because they were in plain clothes, and repeatedly asked to speak with him. *Id.* at 137:4–12, 161:7–15, 162:2–6, 162:14–25, 223:23–224:2, 224:11–17, 230:8–20. They testified that Girbes-Pierce ignored their requests, pushed Rule, tried to get away, attempted to run, flailed his arms, refused to be handcuffed, and kicked Rule. *Id.* at 163:1–10, 175:15–176:13, 178:6–23, 179:17–180:13, 231:10–234:16, 241:6–242:7. Sikorski

testified that the force he used to get Girbes-Pierce under control—pepper-spraying him in the face—was not excessive but necessary to get him in handcuffs. *Id.* at 198:9–199:23, 209:12–21.

On October 31, 2018, after nearly six hours of deliberation, the jury returned a unanimous verdict in favor of Girbes-Pierce on his excessive force claim against Sikorski, but not as to Rule. *See* Verdict at 1, Dkt. No. 72. The jury awarded Girbes-Pierce no compensatory damages, but instead gave him $1.00 in nominal damages and no punitive damages. *Id.* at 2. At that point in the trial, the Court introduced the concept of qualified immunity to the jury and stated: "even though [ ] you have found that [Girbes-Pierce] has proven his claim for excessive force as against Officer Sikorski, Officer Sikorski still may not be liable to [Girbes-Pierce] if he is entitled to what is called qualified immunity . . . ." Tr. 443:24–444:3. The Court further explained that the question of qualified immunity was one for the Court to decide but that the jury played a role in its determination. Specifically, the jury was instructed that it would be presented with a series of factual questions, known as special interrogatories, and its responses would aid the Court in its legal determination regarding qualified immunity. *Id.* 444:10–22.

The Court submitted special interrogatories to the jury the following day to develop the factual record and aid the Court in its determination as to whether Sikorski was entitled to qualified immunity as a matter of law. The first special interrogatory asked: "What act or acts of excessive force did you find that defendant

4

Sikorski committed in this case?" to which the jury responded: "Pepper-spraying plaintiff when he was already confined." Special Interrogatory, Dkt. No. 74. In light of this response, the Court submitted seven additional special interrogatories to the jury. The interrogatories and jury responses are reproduced below:

**The jury hereby unanimously makes the following findings:**

1. Prior to using any force against plaintiff, did defendant Sikorski reasonably believe that plaintiff pushed Lieutenant Rule on September 2, 2015?

   YES __X____          NO _____

2. Prior to using any force against plaintiff, did defendant Sikorski reasonably believe that plaintiff refused to cooperate with police officer instructions on September 2, 2015?

   YES __X___          NO _____

3. Prior to using any force against plaintiff, did defendant Sikorski reasonably believe that plaintiff was attempting to escape from him on September 2, 2015?

   YES __X____          NO _____

4. Did defendant Sikorski reasonably believe that plaintiff resisted his attempts to handcuff him on September 2, 2015?

   YES __X____          NO _____

5. Did defendant Sikorski reasonably believe that plaintiff kicked a police officer on September 2, 2015?

   YES _____          NO ___X____

6. Did defendant Sikorski reasonably believe that plaintiff was flailing his arms during his attempts to handcuff him on September 2, 2015?

    YES __X____        NO _____

7. Before pepper spray was used, did defendant Sikorski reasonably believe that plaintiff was trying to get off the ground on September 2, 2015?

    YES _____        NO ___X____

Special Interrogatories, Dkt. No. 75.

In sum, the jury found that prior to using any force, Sikorski reasonably believed that Girbes-Pierce pushed Rule, refused to cooperate with police officer instructions, and attempted to escape. Tr. at 477:17–478:5. It also found that Sikorski reasonably believed that Girbes-Pierce flailed his arms and resisted his attempts to handcuff him. *Id.* at 478:6–9, 14–17. However, the jury did not find that Sikorski reasonably believed that Girbes-Pierce kicked a police officer or was trying to get off the ground before he was pepper-sprayed. *Id.* at 478:10–13, 18–22.

Now before the Court are the parties' post-trial motions. On November 19, 2018, Girbes-Pierce moved for a new trial on damages under Rule 59(a) of the Federal Rules of Civil Procedure, arguing that the jury's award of $1.00 in nominal damages is inconsistent as a matter of law with its finding that Sikorski used excessive force when he pepper-sprayed Girbes-Pierce "when he was already confined." Plaintiff's Rule 59 Motion for New Trial on Damages ("Pl. Damages Mem.") at 1, Dkt. No. 84. On November 20, 2018, Girbes-Pierce also moved for an

entry of judgment on his state law battery claim. *See* Plaintiff's Post-Trial Motion for the Court to Enter Judgment for the Plaintiff and Against Officer Sikorsk[i] and the City of New York on the Plaintiff's State Law Battery Claim ("Pl. State Law Mem."), Dkt. Nos. 86, 86-1.[3]

On November 30, 2018, Sikorski moved for judgment as a matter of law pursuant to Rule 50 based on qualified immunity, and for dismissal of Girbes-Pierce's state law battery claim. *See* Notice of Motion for Defendant Craig Sikorski's Post-Trial Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50 Based Upon Qualified Immunity, Dkt. No. 87; Memorandum of Law in Support of Defendant Craig Sikorski's Post-Trial Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50 Based Upon Qualified Immunity ("Def. Mem."), Dkt. No. 88.[4] Sikorski argues he is entitled to qualified immunity because "it was objectively reasonable for [him] to pepper spray [Girbes-Pierce] under the circumstances that he faced and/or controlling precedent did not clearly establish the specific right at issue in this case." Def. Mem. at 7. He further contends that given his entitlement to qualified immunity, Girbes-Pierce's state law battery claim should not survive. *Id.* at 10.

---

[3] Girbes-Pierce initially filed his motion without attaching his "Notice of Claim" exhibit so the Court considers his amended motion, Dkt. Nos. 86 and 86-1, instead of Dkt. No. 85, to be the operative motion.

[4] Defendants asserted a qualified immunity defense in the parties' joint proposed jury charge and pre-trial order, Dkt. No. 43, at 11, n.5; Dkt. No. 45, at 2. At the close of evidence, defendants moved for judgment as a matter of law based on qualified immunity but the Court reserved its decision on the motion and submitted the case to the jury. *See* Tr. at 265:5–11.

On January 10, 2019, the parties submitted their respective opposition papers. *See* Plaintiff's Opposition ("Pl. Opp."), Dkt. No. 89; Defendants' Opposition ("Def. Opp."), Dkt. No. 90. In his opposition, Sikorski argues that the jury never should have answered the first special interrogatory: "What act or acts of excessive force did you find that defendant Sikorski committed in this case?" because Girbes-Pierce waived his right to have the question presented to the jury. Def. Opp. at 8. On January 22, 2019, Girbes-Pierce filed a letter in response, arguing that it was well within the Court's discretion to submit this special interrogatory to the jury. *See* Dkt. No. 91.

## II. Motion for Qualified Immunity

### A. Legal Standards

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Jones v. Muniz*, 349 F. Supp. 3d 377, 382 (S.D.N.Y. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Muschette on behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 69 (2d Cir. 2018); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) (collecting cases) (same). "When a defendant invokes

qualified immunity, courts consider whether the plaintiff has shown '(1) that the [defendant] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.' " *Muschette*, 910 F.3d at 69 (citations and internal quotation marks omitted).

"In excessive force cases the qualified immunity and Fourth Amendment analyses often 'converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful.' " *Weather v. City of Mt. Vernon*, No. 08-CV-192 (RPP), 2011 WL 1046165, at *9 (S.D.N.Y. Mar. 22, 2011) (quoting *Cowan v. Breen*, 352 F.3d 756, 764, n.7 (2d Cir. 2003)). When the existence of a constitutional violation is established by a jury verdict that imposes liability against a defendant for his use of excessive force, "the remaining task for the Court is to determine whether the right the jury found to have been violated [ ] was 'clearly established,' *Pearson*, 555 U.S. at 231, and whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Weather*, 2011 WL 1046165, at *9 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

The clearly established right must be defined with specificity, not at a high level of generality, particularly in excessive force cases. *See City of Escondido*, 139 S. Ct. at 503. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* (citing

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)).  The Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment."  *City of Escondido*, 139 S. Ct. at 504 (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)).  "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate."  *City of Escondido*, 139 S. Ct. at 504 (quoting *Wesby*, 138 S. Ct. at 590) (internal quotation marks and citation omitted).

## B.    Application

Sikorski argues that he is entitled to qualified immunity because "it was objectively reasonable for [him] to pepper spray [Girbes-Pierce] under the circumstances that he faced and/or controlling precedent did not clearly establish the specific right at issue in this case."  Def. Mem. at 7.  He recounts that the jury found he "reasonably believed" Girbes-Pierce "pushed Lt. Rule twice, attempted to escape, [ ] refused to comply with the officers' instructions," "resisted the officers' attempts to handcuff him[,] and flailed his arms during the attempts to handcuff him."  *Id.* at 8. Sikorski further asserts that, "when [Girbes-Pierce] was on the ground, struggling against being placed in handcuffs, [Girbes-Pierce's] three friends were approximately 10 feet away and growing increasingly hostile towards the officers."  *Id.*  He contends that it was "objectively reasonable" to use pepper spray to "end[ ] the struggle," handcuff Girbes-Pierce, and "effectuate an arrest quickly, especially as other methods proved ineffective."  *Id.*

Girbes-Pierce counters that "under the factual circumstances of this case, viewed in the light most favorable to [him], it was not reasonable for Officer Sikorski to believe he was justified in pepper-spraying [him]." Pl. Opp. at 1. He argues that "it was clearly established that 'the use of entirely gratuitous force is unreasonable and therefore excessive' and that 'no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee.' " *Id.* at 2 (citing *Tracy v. Freshwater*, 623 F.3d 90, 99, n.5 (2d. Cir. 2010)). Girbes-Pierce further argues that "the evidence shows that [he] was already restrained and did not pose any threat to the officers when the pepper spray was used against him," and "the jury plainly rejected [Sikorski's] position at trial that he used the pepper spray because he was unable to gain control over [him] and that [he] was attempting to get up off the ground." Pl. Opp. at 4.

In this relatively straightforward excessive force case, the jury had to determine whether defendants' use of force against Girbes-Pierce during his arrest was reasonable under the circumstances. It resolved this question by finding that Sikorski's use of pepper spray against Girbes-Pierce "when he was already confined" was unreasonable. Thus, the jury has already determined that Sikorski violated a constitutional right. The only remaining question for the Court is whether the right the jury found to have been violated was "clearly established" such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

11

The Court finds that at the time of the incident, on September 2, 2015, it was clearly established law that an officer uses excessive force when he pepper-sprays an arrestee who is already "confined."[5] "Unquestionably, infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects, and, as such, its use constitutes a significant degree of force." *Tracy*, 623 F.3d at 98 (internal citation omitted). "Accordingly, . . . it should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no immediate threat to the arresting officer." *Id.* In the Second Circuit, it is clearly established that using significant force, including the significant force of pepper spray, "against arrestees who no longer actively resisted arrest or posed a threat to officer safety" is a Fourth Amendment violation. *See Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 297 (S.D.N.Y. 2014) (citations omitted); *see also Tracy*, 623 F.3d at 99, n.5 ("[I]t was well established . . . that the use of entirely gratuitous force is unreasonable and therefore excessive, *see, e.g., Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999), and in light of this precedent, we presume that no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee.").

Courts have granted qualified immunity to officers when they used pepper spray against an arrestee who was actively resisting arrest or posed a threat to officers. *See, e.g., Brown v. City of New York*, 862 F.3d 182, 189–92 (2d Cir. 2017)

---

[5] "Confinement" (n.) or "confine" (vb.) is defined as "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained." Black's Law Dictionary 362 (10th ed. 2014).

(qualified immunity granted when arrestee refused to comply with instructions to place her hands behind her back for handcuffing and officers warned her prior to each application of pepper spray); *McKnight v. Vasile*, No. 11-CV-6328P, 2017 WL 1176051, at \*28 (W.D.N.Y. Mar. 30, 2017) ("[W]here an individual is actively resisting arrest and refusing orders, and the scene presents a risk to officer safety—courts have granted judgment to the officers on the grounds that the use of pepper spray was not excessive or that the officers were entitled to qualified immunity.") (collecting cases).

By contrast, courts have denied qualified immunity to officers for using pepper spray on individuals who were not actively resisting arrest or who had already been restrained. *See, e.g., Knight v. City of New York*, No. 16-CV-7888 (RJS), 2019 WL 95480, at \*5 (S.D.N.Y. Jan. 2, 2019) ("[A]t least since *Tracy*, deploying pepper spray in the face of [an individual] 'already in handcuffs and offering no further active resistance' constitutes a clearly established unreasonable use of force.") (citing *Tracy*, 623 F.3d at 98); *Jackson v. Tellado*, 236 F. Supp. 3d 636, 669 (E.D.N.Y. 2017) ("It is clearly established that the use of pepper spray against a restrained and cooperative person constitutes excessive force. Once Plaintiff was handcuffed and restrained, any additional use of force was plainly unnecessary and thus violated clearly established law.") (collecting cases); *Toliver v. New York City Dep't of Corr.*, 202 F. Supp. 3d 328, 338 (S.D.N.Y. 2016) ("[T]he Court is not prepared to find that [defendant's] decision to pepper-spray Plaintiff while he

13

was restrained was objectively reasonable, as it must for Defendant to prevail on his qualified immunity argument.") (citing *Tracy*, 623 F.3d at 99, n.5).

Here, the jury explicitly found that Sikorski pepper-sprayed Girbes-Pierce "when he was already confined." Tr. 475:17–22. This is consistent with Sikorski's testimony that after Girbes-Pierce had been forced to the ground, both defendants had a hold on him with their hands, and at different points in time used their knees and weight to hold him down. *Id.* at 189:14–191:22. The jury also found that Sikorski did not reasonably believe that Girbes-Pierce was trying to get off the ground before he was pepper-sprayed. *Id.* at 478:18–22.

Although the jury also found that Sikorski reasonably believed Girbes-Pierce pushed Rule, attempted to escape, refused to comply with instructions, resisted attempts to handcuff him, and flailed his arms during the attempts to handcuff him at certain points in time during the incident, *id.* at 477:17–478:17, the Court must construe the evidence in the light most favorable to Girbes-Pierce "as the party in whose favor the jury found on the [excessive force] claim[ ] and as the party against whom judgment [is being] sought as a matter of law." *Kerman v. City of New York*, 374 F.3d 93, 114 (2d Cir. 2004). In doing so, the evidence suggests that while Girbes-Pierce was uncooperative and resistant during the earlier stages of the incident, defendants eventually gained control of Girbes-Pierce and Sikorski pepper-sprayed him <u>after</u> he had already been physically restrained—after he was forced to the ground, after Sikorski and Rule had a hold on him with their weight, hands,

and knees, and when he was not trying to get off the ground. There is no basis in the record to find that Girbes-Pierce was actively resisting arrest or posed a threat to defendants at the time when Sikorski pepper-sprayed him.

While it is true that Girbes-Pierce was pepper-sprayed before he was handcuffed, handcuffing was not required for the jury to have reached an excessive force verdict. Indeed, in *Garcia v. Dutchess Cty.*, the court considered the situation of a plaintiff who, like Girbes-Pierce, "was on the ground but not yet handcuffed" when significant force was used. 43 F. Supp. 3d at 287. Under these circumstances, the court in *Garcia* found that "it was a Fourth Amendment violation to use significant force against arrestees who no longer actively resisted arrest or posed a threat to officer safety, regardless of whether that significant force emanated from a pepper spray canister or the trigger of a taser." *Id.* at 297 (internal quotation marks and citations omitted).

Although Sikorski cursorily cites to *Davis v. Callaway*, an unreported case in which summary judgment was granted on a Fourth Amendment excessive force claim "to a defendant-officer where the officer used pepper spray on a suspect who was not struggling but not yet handcuffed," *see* Def. Mem. at 10 (internal quotation marks omitted) (citing No. 3:05-CV-127 (DJS), 2007 WL 1079988 (D. Conn. Apr. 9, 2007)), he provides no analysis for the Court to consider as to why this case supports his entitlement to qualified immunity. In addition, the Court is unpersuaded by the decision in *Davis* because in reaching its conclusion that the

15

use of pepper spray was objectively reasonable, the court primarily relied on a

district court case that was vacated in relevant part by the Second Circuit. *See*

*Davis*, 2007 WL 1079988, at *6–7 (citing *McLaurin v. New Rochelle Police Officers*,

373 F. Supp. 2d 385, 394 (S.D.N.Y. 2005) (claims against defendant who sprayed

mace in face of arrestee dismissed)), *vacated by*, No. 04-4849-CV, 2007 WL 247728,

at *2 (2d Cir. Jan. 25, 2007) (judgment with respect to grant of qualified immunity

as to defendant who used pepper spray vacated)).

Based on the standards discussed above, no reasonable officer could have

believed that he was entitled to use pepper spray gratuitously against an arrestee

who was restrained and no longer actively resisting arrest. Existing precedent

places the unlawfulness of pepper-spraying an arrestee who is already "confined"

beyond debate. Given that Sikorski violated Girbes-Pierce's clearly established

right to be free from the excessive force of pepper spray when he was already

confined, such that it would be clear to a reasonable officer that this conduct was

unlawful in the situation he confronted, Sikorski is not entitled to qualified

immunity on Girbes-Pierce's excessive force claim.

## III.   **Girbes-Pierce's New York State Law Battery Claim**

### A.   **Legal Standards**

"New York courts analyze . . . battery claims against police officers using the

same standard applicable to excessive force claims under Section 1983." *Tompkins*

*v. City of New York*, 50 F. Supp. 3d 426, 440 (S.D.N.Y. 2014) (citing *Posr v. Doherty*,

944 F.2d 91, 94–95 (2d Cir. 1991)). Furthermore, "under New York state law, municipalities can face liability for claims such as . . . battery under a theory of respondeat superior." *Mesa v. City of New York*, No. 09-CV-10464 (JPO), 2013 WL 31002, at *34 (S.D.N.Y. Jan 3, 2013) (citing *Sankar v. City of New York*, 867 F. Supp. 2d 297, 314 (E.D.N.Y. 2012); *see also Graham v. City of New York*, 928 F. Supp. 2d 610, 626 (E.D.N.Y. 2013) (same).

Once liability has been established, "[t]he standard for determining whether police officers enjoy immunity for . . . battery actions is the same under state law as it is under federal law." *Graham*, 928 F. Supp. 2d at 625 (collecting cases); *see also Bancroft v. City of Mt. Vernon,* 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) ("[A]s is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution."). Thus, if defendants "fail[ ] to meet the standard for immunity under federal law, they also fail to meet [the] standard for immunity under New York State Law." *Graham*, 928 F. Supp. 2d at 626.

### B. Application

Given the jury's finding of liability on his federal excessive claim, Girbes-Pierce now seeks judgment against Sikorski and defendant City of New York, under

the theory of respondeat superior, on his state law battery claim.[6] Girbes-Pierce argues that "[b]ecause the essential elements of [his] federal law excessive force claim and state law battery claim are substantially identical, a finding of liability as to the first requires a finding of liability as to the second." Pl. State Law Mem. at 1 (citations and internal quotation marks omitted). He further argues that "[u]nder state law, a municipality may be held liable for common law torts on a theory of respondeat superior." *Id.* at 2 (citations omitted). Defendants City of New York and Sikorski counter that Girbes-Pierce is not entitled to judgment on his state law battery claim because his Notice of Claim is deficient, Sikorski is entitled to state law immunity, and the City of New York is entitled to governmental immunity. *See* Def. Opp. at 9–13.

In light of the standards discussed above, the Court finds that Girbes-Pierce is entitled to judgment against Sikorski and the City of New York on his state law battery claim. First, Girbes-Pierce prevailed on his federal excessive force claim, so it follows that he must also prevail on his state law battery claim. Second, because the Court finds that qualified immunity does not apply under federal standards, it is also inapplicable under state law.

---

[6] Girbes-Pierce named the City of New York as a defendant in his complaint under the doctrine of respondeat superior, *see* Complaint dated September 26, 2016 ¶¶ 3, 36, Dkt. No. 1, but the parties agreed that the City of New York would not be identified as a defendant before the jury at trial. *See* Defendants' Trial Memorandum of Law dated June 29, 2018 at 1, Dkt. No. 46; October 1, 2018 Conference Transcript at 15:11–17, Dkt. No. 59.

Third, defendants perfunctorily assert that the City of New York is entitled to governmental immunity, *see* Def. Opp. at 12–13, but their argument relies on "the judgment error theory," which is inapplicable in this case. "The judgment[ ] error theory applies to 'discretionary or quasi-judicial acts that involve the exercise of reasoned judgment which could typically produce different acceptable results.' " *Graham*, 928 F. Supp. 2d at 626, n.8 (alternations omitted) (citing *Estate of Rosenbaum by Plotkin v. City of New York*, 982 F. Supp. 894, 896 (E.D.N.Y. 1997)). However, "[t]his theory is not applicable when [ ] officers fail to follow procedures" and "excessive force would be outside of New York City procedures." *Graham*, 928 F. Supp. 2d at 626, n.8 (citations omitted).

Finally, even though Girbes-Pierce did not specifically name Sikorski in his Notice of Claim, *see* Dkt. No. 86–1, that deficiency alone is not a reason to reject the merits of his motion. *See, e.g., Mortimer v. City of New York*, No. 15-CV-7186 (KPF), 2018 WL 1605982, at *11–12 (S.D.N.Y. Mar 29, 2018) (assessing merits of claims despite failure to name individual defendant on Notice of Claim) (collecting cases); *see also Bah v. City of New York*, No. 13-CV-6690 (PKC), 2014 WL 1760063, at *12 (S.D.N.Y. May 1, 2014).

## IV.    Motion for New Trial on Damages

### A.    Legal Standards

Under Rule 59(a), a court may, after a jury trial, grant a motion for a new trial on the issue of damages. *See Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d

442, 465–66 (S.D.N.Y. 2014) (citing Fed. R. Civ. P. 59(a)(1)(A)) ("The court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."). " 'Nevertheless, in practice courts do not grant new trials as freely as the language [of Rule 59] suggests,' *Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F. Supp. 2d 237, 241 (S.D.N.Y. 2012), and movants for a new trial are still held to 'a heavy burden.' " *Toliver*, 202 F. Supp. 3d at 340 (citing *Spinelli v. City of New York*, No. 02-CV-8967 (RWS), 2011 WL 2802937, at *1 (S.D.N.Y. July 12, 2011)).

When considering a Rule 59(a) motion, a court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." *ING Global v. United Parcel Service Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014) (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012)) (internal quotation marks omitted). However, Second Circuit cases "teach that a high degree of deference is accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency." *Id.* (citing *Raedle*, 670 F.3d at 418). When "a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Id.* (quoting *Raedle*, 670 F.3d at 418–19) (internal quotation marks omitted).

With respect to a nominal damages award in an excessive force case, where "the jurors were entitled to resolve the conflicting testimony in a way that permitted them to find that excessive force, though used, did not result in compensable injuries, the award of only nominal damages will not be disturbed." *Alvarez v. City of New York*, No. 11-CV-5464 (JPO), 2017 WL 1506563, at *2 (S.D.N.Y. Apr. 27, 2017) (nominal damages award upheld even when plaintiff had suffered bullet wound from excessive force) (quoting *Haywood v. Koehler*, 78 F.3d 101, 105 (2d Cir. 1996)) (internal quotation marks omitted). Indeed, "a jury finding of excessive force does not automatically entitle a [plaintiff] to compensatory damages as a matter of law." *Ali v. Kipp*, 891 F.3d 59, 65 (2d Cir. 2018) (quoting *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 314 (2d Cir. 1999)) (internal quotation marks omitted). "As the Second Circuit has recognized, 'a jury could reasonably determine that compensatory damages are inappropriate even where excessive force was used,' and therefore, a jury may 'reasonably award' only 'nominal damages' when the 'victim's claims of injury lack credibility, or where the injuries lack monetary value.' " *Toliver*, 202 F. Supp. 3d at 336 (quoting *Amato*, 170 F.3d at 314). "[A] verdict should be overturned and set aside only if there is no view of the case that can harmonize the jury's findings." *Ali v. Kipp*, No. 11-CV-5297 (NGG) (VMS), 2016 WL 7235719, at *8 (E.D.N.Y. Dec. 13, 2016) (citing *Tolbert v. Queens College*, 242 F.3d 58, 74 (2d Cir. 2001)).

### B. Application

Girbes-Pierce argues that "a new trial on the issue of damages is required" because the jury's award of $1.00 in nominal damages is inconsistent as a matter of law with its finding that Sikorski pepper-sprayed him "when he was already confined." Pl. Damages Mem. at 1–2. He claims that he suffered "at least some actual injury," and is entitled to an award of compensatory damages. *Id.* at 2. Sikorski counters that "a finding of liability on an excessive force claim based on the use of pepper spray and an award of nominal damages are not necessarily inconsistent," and that Girbes-Pierce "did not prove [ ] he is entitled to compensatory damages." Def. Opp. at 3–4. Sikorski contends that Girbes-Pierce "failed to adduce credible evidence" to support his argument that "the pepper spray unquestionably caused him physical pain and suffering," pointing out Girbes-Pierce's lack of testimony about any injuries from the pepper spray, the lack of visible injuries in his mugshot, and the lack of medical treatment relating to the pepper spray. *Id.* at 4, 7.

The parties also raise certain procedural issues in their motion papers. Girbes-Pierce recounts that at the charging conference, he objected to the inclusion of a nominal damages charge on the grounds that such an award would be incompatible, as a matter of law, with being pepper-sprayed in the face. Pl. Damages Mem. at 2, n.1; *see* Tr. at 302:7–25. While it noted his objection, the Court included a nominal damages instruction in its charge given the possibility that the

jury could find that Girbes-Pierce was pepper-sprayed but suffered no compensable injuries (which is exactly what the jury found here). *See* Tr. at 303:23–305:16. Indeed, it would have been "plain error not to instruct on nominal damages in light of the existence of a theory of the case where a constitutional violation is found but no compensable injury." *Ali*, 2016 WL 7235719, at *8 (citing *Gibeau v. Nellis*, 18 F.3d 107, 110–11 (2d Cir. 1994)). Thus, it was proper for the Court to include a nominal damages instruction in its charge to the jury.

On Sikorski's part, he argues that the jury never should have answered the special interrogatory: "What act or acts of excessive force did you find that defendant Sikorski committed in this case?" because Girbes-Pierce waived his right to ask the question by not requesting it before the general verdict was returned. Def. Opp. at 8. He contends that without the answer to the special interrogatory, there is no basis to upset the jury's verdict or for Girbes-Pierce's motion for a new trial. *Id.* at 9. Sikorski initially consented to this special interrogatory at a conference on October 31, 2018, but objected to the question at a subsequent conference the next day. *See* Tr. at 446:7–450:4, 457:5–18. In any event, the Court determined in its discretion that a response to the special interrogatory was necessary to address the issues of the nominal damages award and qualified immunity and submitted the question to the jury. *See Estate of Jaquez by Public Administrator of Bronx Cty. v. City of New York*, 706 F. App'x 709, 717 (2d Cir. 2017) (court has discretion to submit special interrogatories to the jury if they

would assist in making legal determinations); *Barksdale v. Colavita*, 506 F. App'x 82, 85 (2d Cir. 2012) (same). Thus, Sikorski's waiver argument is without merit.

With respect to the use of pepper spray and any injuries it may have caused, the Court considers the evidence presented at trial. It is true that Girbes-Pierce's witnesses, Bridget Spillane, Noreen Lippincott, and Sarah Shapiro, testified that they observed the effects of the pepper spray on him on the night of the incident, explaining that his eyes and face were red and swollen, his eyes were watery with heavy mucous, and that he was moaning, screaming, and showing signs of discomfort and pain. *See* Deposition Transcript of Bridget Spillane, Tr. at 123:18–125:3, 126:1–9; Deposition Transcript of Noreen Lippincott, Pl.'s Ex. 14, at 24:17–19, 66:2–13, 72:6–18; Deposition Transcript of Sarah Shapiro, Pl.'s Ex. 15, at 53:11–16, 57:7–16.[7] Nonetheless, even though the Second Circuit has recognized that the "infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects," *Tracy*, 623 F.3d at 98 (internal citation omitted), Girbes-Pierce himself never testified to any injuries or damages from being pepper-sprayed, and his mugshot taken after the incident, which was before the jury, did not show any visible injuries to his face. *See* Def. Ex. M. "Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were *de minimis*." *Ali*, 2016 WL 7235719, at *7 (citing *Kerman*, 374 F.3d at 123). Here, "[t]he jury could have concluded [and, in fact, did conclude]

---

[7] Girbes-Pierce's counsel read Spillane's deposition to the jury at trial. *See* Tr. at 114:4–127:5. Lippincott's and Shapiro's depositions were video recorded in advance and played for the jury at trial. Their deposition transcripts were admitted into evidence and provided to the jury during its deliberations. *Id.* at 377:4–8.

that while [Girbes-Pierce] proved he was subjected to excessive force and that he was harmed as a result, what injury he suffered was *de minimis* and lacked monetary value." *Id.* (citing *Toliver*, 202 F. Supp. 3d at 336).

Girbes-Pierce also offered medical records to demonstrate his medical expenses, but his attorney, on summation, acknowledged that Girbes-Pierce did not testify about these records during trial. *See* Tr. 371:6–8. However, these records, all admitted into evidence, do not support an award of compensatory damages for pepper spray-related injuries. The $250 medical bill from Dr. Stuart Kahn was for an orthopedic evaluation. *See* Pl.'s Ex. 10. The $2,500 billing statement from Dr. Bridget Amatore was for therapy sessions. *See* Pl.'s Ex. 11. And the $1,709.57 hospital bill from Lenox Hill Healthplex was for his emergency visit after the incident (notably, the accompanying records do not include any diagnoses or treatment related to the pepper spray). *See* Pl.'s Exs. 7–8. Without any supporting testimony, there is nothing to suggest that these medical expenses were related to Girbes-Pierce's pepper spray-related injuries. Moreover, there is no mention of swollen eyes or mucous discharge in these medical records to suggest that Girbes-Pierce had received any treatment as a result of being pepper-sprayed. "[T]he jury could have reasonably concluded that [Girbes-Pierce] failed to support his claims of injury such that any compensatory damages award would have been purely speculative." *Alvarez*, 2017 WL 1506563, at *3. "When a jury 'is unable to compute the monetary damages except by engaging in pure speculation and guessing,' an

award of nominal damages is appropriate." *Id.* (quoting *Hyppolite v. Collins*, No. 3:11-CV-588 (WIG), 2015 WL 2179772, at *4 (D. Conn. May 8, 2015)).

The Court also considers the jury's verdict in light of the credibility of the witnesses, mindful that "a high degree of deference is accorded to the jury's evaluation of witness credibility." *ING Global*, 757 F.3d at 99 (citing *Raedle*, 670 F.3d at 418). "The law is clear that 'the jurors were not required to accept the entirety of either side's account, but were free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credited.' " *Ali*, 891 F.3d at 66 (quoting *Haywood*, 78 F.3d at 105). And "[t]he jury was free to conclude that the truth lay somewhere between the[ ] [parties'] versions of the relevant events." *Ali*, 891 F.3d at 66. Indeed, the jury's verdict reflects such a compromise—finding Sikorski liable for excessive force but also that Girbes-Pierce did not suffer any compensable injuries.

In *Toliver v. New York City Dep't of Corr.*, a case analogous to both the facts and procedural posture here, the court rejected plaintiff's motion for a new trial on damages after a nominal damages award because "the jury could have found [p]laintiff's testimony regarding his injuries to be wildly exaggerated and unworthy of belief . . . and yet still have found that [defendant's] use of pepper spray was unjustified and malicious." 202 F. Supp. 3d at 340. Although Girbes-Pierce argues that his case is distinguishable and that he "did not suffer from the same lack of credibility as the plaintiff in *Toliver*," Pl. Damages Mem. at 7–8, and that may be

true to an extent, his credibility was certainly challenged at trial. During his cross-examination, defendants attempted to undermine Girbes-Pierce's credibility by: (1) showing how he had exaggerated details such as how many officers had "attacked" him and how many meetings he had scheduled for the day after the incident, Tr. at 87:17–23, 95:21–97:4; (2) demonstrating that he had been drinking alcohol at multiple locations on the night of the incident, *id.* at 88:11–12, 95:16–20; (3) exposing that he had left his apartment for a work event only one week after the incident even though he testified that he could not get out of bed for three to four weeks, *id.* at 107:23–110:3; and (4) suggesting that his emotional testimony on the witness stand was an "act" because he had gone to acting school, *id.* at 110:4–17.

The record in this case provides an insufficient basis on which to conclude that the jury's verdict was "egregious", "seriously erroneous," or a "miscarriage of justice." *ING Global*, 757 F.3d at 99. For the reasons discussed above, there is a path by which the jury could have arrived at an award of only nominal damages. The jury could have credited Girbes-Pierce's version of events when it found that Sikorski's use of pepper spray "when he was already confined" was excessive and unreasonable under the circumstances, and yet also concluded that Girbes-Pierce suffered only minimal injuries from the pepper spray, without credibly proving any resulting physical, emotional, or financial damages. There is thus no basis to upset the jury's award of $1.00 in nominal damages.

## V.    Conclusion

For the foregoing reasons, Sikorski's motion for judgment as a matter of law based on qualified immunity is denied (Dkt. No. 87); Girbes-Pierce's motion for judgment on his state law battery claim against Sikorski and the City of New York is granted (Dkt. No. 86); and Girbes-Pierce's Rule 59(a) motion for a new trial on damages is denied (Dkt. No. 84). The Clerk of Court is respectfully directed to close Dkt. Nos. 84 through 87 and enter judgment in the amount of $1.00 in favor of Girbes-Pierce and against the City of New York and Sikorski, and to dismiss the complaint against defendant Rule.

**SO ORDERED.**

Dated: April 9, 2019
     New York, New York

_____
JAMES L. COTT
United States Magistrate Judge